Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JOSÉ JULIÁN GONZÁLEZ CELIMEN, ISABELITA ANDRADES CARABALLO, Sociedad Legal de Gananciales compuesta por ambos<br><br>Peticionarios<br><br>v.<br><br>RAFAEL OMAR FERRER NAVARRO, DAYANA HERRERA GÓMEZ, Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos | KLCE202500122 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2024CV03308 (505)<br><br>Sobre: Desahucio por falta de pago (cobro de dinero – ordinario) |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 13 de marzo de 2025.

Comparece ante nos el señor José Julián González Celimen ("señor González"), la señora Isabelita Andrades Caraballo y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "los Peticionarios") mediante *Recurso de Certiorari* presentado el 6 de febrero de 2025. Nos solicitan la revocación de *Resolución* emitida el 3 de enero de 2025 y notificada el 7 de enero del mismo año por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud de esta, el foro primario declaró *No Ha Lugar* a la solicitud de desestimación de reconvención instada por los Peticionarios, en la que argumentaron que la causa de acción presentada por la señora Dayana Herrera Gómez ("señora Herrera") no procedía, puesto que el inmueble objeto de la presente controversia, no contenía los espacios para uso residencial familiar

requeridos por ley. En consecuencia, el foro primario resolvió que determinaría la cantidad de los aludidos espacios luego de celebrada una vista evidenciaria para esos propósitos.

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

## I.

El 9 de abril de 2024, los Peticionarios instaron *Demanda de Desahucio por Falta de Pago y Cobro de Dinero* contra el señor Rafael Omar Ferrer Navarro ("señor Ferrer"), la señora Herrera y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "los Recurridos").[1] En esta, los Peticionarios explicaron que eran los dueños de una propiedad inmueble sita en el municipio de San Juan. Alegaron que la referida propiedad inmueble constaba de dos (2) plantas. Detallaron que estos residían en la planta alta y que la planta baja constaba de cuatro (4) apartamentos dedicados a arrendamiento a largo plazo. Los Peticionarios esbozaron que uno de esos apartamentos fue arrendado por los Recurridos por un canon mensual de quinientos treinta dólares ($530.00) más sesenta dólares ($60.00) por servicio de internet.

Conforme surge de las alegaciones de la demanda, los Recurridos comenzaron a arrendar el mencionado apartamento el 1 de octubre de 2019 y, en esa ocasión, el contrato fue suscrito únicamente por el señor Ferrer. Los Peticionarios adujeron que posteriormente se suscribió otro contrato de arrendamiento, pero esta vez también firmó la señora Herrera. Sin embargo, los Peticionarios sostuvieron que los Recurrentes tuvieron problemas maritales y se separaron entre enero y febrero de 2023. Arguyeron que el señor Ferrer se mudó con su madre y la señara Herrera se quedó en el apartamento.

---

[1] *Véase*, Apéndice del Recurso, págs.1-6.

Los Peticionarios agregaron que, tras vencerse el canon de renta en febrero de 2023, le inquirieron a la señora Herrera el pago y esta indicó que no podía sufragar las mensualidades requeridas. Añadieron que, para marzo de 2023, la señora Herrera desalojó voluntariamente el apartamento. Además, expusieron que posterior a este suceso, la madre del señor Ferrer se comunicó con los Peticionarios para auscultar la posibilidad de que éste regresara a arrendar el apartamento. Los Peticionarios expresaron que, tras discutirlo, el 6 de mayo de 2023, se renovó el contrato de arrendamiento con el señor Ferrer por el término de un (1) año. Transcurrido un tiempo de otorgado el contrato con el señor Ferrer, los Peticionarios argumentaron que, desde noviembre de 2023 hasta abril de 2024, el señor Ferrer no había pagado las mensualidades. De la misma forma, destacaron que, en febrero de 2024, el señor Ferrer fue removido del apartamento por una orden de protección *ex parte* emitida a favor del señor González, por un incidente que había ocurrido el 31 de octubre de 2023. No obstante, advirtieron que las pertenencias del señor Ferrer aun continuaban en el apartamento.

Por lo anteriormente expuesto, los Peticionarios solicitaron al foro primario que dictara sentencia y emitiera los siguientes remedios:

A. Ordenando el desahucio y lanzamiento de los Demandados, sus pertenencias, y cualquier otra persona que en su nombre ocupe el Apartamento Arrendado, por la falta de pago de los cánones de renta para los meses de noviembre de 2023 hasta el presente, más el pago de los $60.00 al mes por el servicio de internet por los meses de noviembre del 2023 a enero del 2024.

B. Condenando a los Demandados solidariamente al pago de los cánones de arrendamiento adeudados, que hasta el presente suman la cantidad de $3,180.00, más los $180.00 adeudados por razón del servicio de internet provisto por los Demandantes, así como a cualquier otro pago que se acumule hasta la fecha en que haga entrega de la propiedad con los intereses legales correspondientes.

C. Condenando a los Demandados al pago de una cantidad no menor de $2,500.00 por concepto de costas, gastos y los honorarios de abogado incurridos por los Demandantes en este proceso judicial, y que también se

conceda cualquier otra indemnización o remedio que corresponda de conformidad con la ley[.][2]

Posteriormente, el 24 de abril de 2024, los Peticionarios instaron *Demanda Enmendada de Desahucio por Falta de Pago y Cobro de Dinero*.[3] En síntesis, aclararon que los apartamentos que poseían los Peticionarios en la planta baja del inmueble eran tres (3) en lugar de cuatro (4). Subsiguientemente, el 25 de abril de 2024, los Peticionarios presentaron *Segunda Demanda Enmendada de Desahucio por Falta de Pago y Cobro de Dinero*.[4] Por virtud de esta, agregaron algunos detalles a las alegaciones que habían presentado previamente, tales como que los Recurridos ofrecieron comprar el inmueble a los Peticionarios.

En respuesta, el 30 de abril de 2024, la señora Herrera presentó *Moción Anunciando Representación Legal, Contestación a la Demanda Enmendada y Reconvención*.[5] En esta, negó ciertas alegaciones y levantó las correspondientes defensas afirmativas. Asimismo, mediante este escrito, instó una reconvención. En tal sentido, la señora Herrera esbozó que solicitó una orden de protección contra su esposo, por un patrón de violencia doméstica, la cual fue expedida. Afirmó que dicha orden de protección incluía una orden de desalojo contra el señor Ferrer. Argumentó que, desde que se emitió la aludida orden de protección, el señor González realizó una serie de actos para promover que la señora Herrera desalojara el apartamento sin que mediara incumplimiento de contrato. Especificó que el señor González le entregó una carta de desalojo, acosó a la señora Herrera a través de múltiples llamadas telefónicas para asegurarse de que ella recogiera sus pertenencias y se marchara, además de perturbar la paz de esta con cometarios discriminatorios entre otras circunstancias.

---

[2] *Íd.*, pág. 5.
[3] *Íd.*, págs. 44-49.
[4] *Íd.*, págs. 54-59.
[5] *Íd.*, págs. 76-84.

Cónsono con lo anterior, la señora Herrera sostuvo que desde el 30 de marzo de 2023 no residía en el apartamento ya que se refugió con una amiga. Empero, adujo que el 4 de abril de 2023 advino en conocimiento de que el señor Ferrer estaba residiendo la propiedad, la cual anteriormente había sido desalojada por el señor González. Adujo que, en otras palabras, el señor González la desalojó del apartamento para contratar con el señor Ferrer. De igual manera, la señora Herrera explicó que había radicado una querella federal al amparo del *Fair Housing Act,* 42 USC sec. 3601 *et seq.* ("FHA") contra el señor González, por actos discriminatorios en la vivienda. El 24 de abril de 2024, el Departamento de Vivienda Federal solicitó la paralización discrecional de los procesos mientras se ventilaban los procesos por discrimen en la vivienda contra la señora Herrera.

Ante este cuadro fáctico, la señora Herrera presentó una causa de acción por virtud de la FHA, la cual es ejecutable en los foros estatales y prohíbe el discrimen en venta o alquiler de vivienda por razón de raza, color, sexo, religión. Abundó que, conforme a cierta jurisprudencia, la categoría sexo incluía a sobrevivientes de violencia doméstica. De la misma forma, destacó que la demanda de desahucio interpuesta por los Peticionarios era un subterfugio para evadir la responsabilidad derivada de violaciones al FHA. Por tanto, solicitó al foro *a quo* lo que sigue:

1. Desestime la presente demanda en lo concerniente a la Sra. Herrera y a su responsabilidad como parte de la Sociedad Legal de Gananciales, así como a la propia Sociedad Legal de Gananciales.

2. Atienda la represalia contra la Sra. Herrera y revictimización que deriva de la presentación del recurso ante sí, imponiendo una compensación por

   a. Daños económicos detallados: $2,178.00 y solicitó los siguientes remedios $1,100 (pago de fianza y mes de renta adelantado)

   b. $268 (compra de mattress en Costco)

   c. $200 (compra de cama)

   d. $250 (costos de mudanza, incluyendo uso de un vehículo) e. $360 (tiempo invertido en la mudanza)

b. [sic] Daños morales: $50,000

c. [sic] Honorarios de abogadas por temeridad.[6]

Por su lado, el 8 de mayo de 2024, los Peticionarios instaron *Moción Urgente Solicitando Orden Para que la Codemandada Dayana Herrera Gómez Conteste la Segunda Demanda Enmendada (Anot. Num. 26), Solicitando Acceso Urgente a Documentos Radicados o Por Radicar De Forma Confidencial (Como el Exhibit 1 de su Contestación a la Demanda Enmendada (Anot. Num. 31)), y Solicitando Término Adicional Para Fijar Posicion y/o Replicar a la Reconvención.*[7] En esta, detallaron la señora Herrera contestó la primera demanda enmendada que se presentó el 24 de abril de 2024 y no la segunda demanda enmendada instada el 25 de abril de ese año. Por otra parte, el 12 de mayo de 2024, los Peticionarios radicaron *Moción Bajo la Regla 10.2(5) Solicitando Desestimación con Perjuico de la Reconvención (Anot. Num. 31).*[8] Mediante la misma, sostuvieron que correspondía desestimar con perjuicio la reconvención ya que en el caso de marras era aplicable la exención de responsabilidad civil provistas en la sección 803 (b)(2) de la FHA, *supra.* En específico, fundamentaron su posición con el argumento de que la aludida disposición establecía que, la causa de acción al amparo de la FHA que prohibía el discrimen, "no aplican cuando se trata de una residencia en donde hay cuatro (4) o menos *dwellings* o habitaciones o apartamentos disponibles para que puedan residir cuatro (4) familias o menos, incluyendo a los dueños que residen en una" (Énfasis suprimido).[9]

Así las cosas, el 15 de mayo de 2024, la señora Herrera presentó *Contestación a la Segunda Demanda Enmendada y Reconvención.*[10] En esta, negó ciertas alegaciones, levantó sus

---

[6] *Íd.*, págs. 83-84.
[7] *Íd.*, págs. 94-99.
[8] *Íd.*, págs. 100-109.
[9] *Íd.*, pág. 107.
[10] *Íd.*, págs. 114-122.

defensas afirmativas e instó, esencialmente la misma reconvención presentada el 30 de abril de 2024. Por su lado, el 16 de mayo de 2024, los Peticionarios presentaron moción en la que reiteraron su solicitud de desestimación a la reconvención, presentada el 12 de mayo de 2024 y en la cual adoptaron en este escrito por referencia.[11]

Tras varios trámites procesales los cuales son innecesarios detallar, el 10 de junio de 2024, la señora Herrera presentó *Oposición a Moción de Desestimación y Oposición a Solicitud de Orden.*[12] En esta, indicó que el único fundamento que alegaron los Peticionarios para desestimar la reconvención giraba en torno al número de apartamentos que estos arrendaban. No obstante, la señora Herrera señaló que la reclamación de la reconvención no tenía que ver con la cantidad de los apartamentos, sino que estaba relacionada con la actuación discriminatoria de los Peticionarios, quienes favorecieron al esposo de la señora Herrera pese a que existía una orden de protección en su contra.

De otra parte, el 3 de julio de 2024, los Peticionarios presentaron *Réplica a la Oposición (Anot. Num. 63) Radicada por la codemandada Dayana Herrera Gómez,*[13] en la cual, reafirmaron su postura en cuanto la aplicación de la exención provista en la Sección 803 (b)(2) de la FHA. Por su lado, el 11 de septiembre de 2024, el señor Ferrer compareció al pleito mediante *Contestación a Segunda Demanda Enmendada de Desahucio por Falta de Pago y Cobro de Dinero* en la cual negó algunas alegaciones y levantó sus defensas afirmativas.[14]

Ulteriormente, el 23 de septiembre de 2024, los Peticionarios instaron *Moción Suplementaria Suplementando "Moción Bajo la Regla 10.2(5) Solicitando Desestimación con Perjuicio de la Reconvención*

---

[11] *Íd.*, págs. 128-131.
[12] *Íd.*, págs. 132-139.
[13] *Íd.*, págs. 140-146.
[14] *Íd.*, págs. 148-149.

*(Anot. Num. 31)" (Anot. Num 41).*[15] En esta, explicaron que la propiedad inmueble contenía solamente tres (3) apartamentos. Abundaron sobre el hecho de que en la planta baja existía una terraza cerrada en donde residía, de forma gratuita, la cuidadora de uno de los Peticionarios, la señora Isabelita Caraballo, quien estaba encamada. Argumentaron que conforme cierta jurisprudencia, el lugar en donde residía una cuidadora, no se contaba como un *independent dwellings* ya que se entendía que el cuidador no era independiente del residente que cuidaba, máxime cuando residía en el espacio de forma gratuita.

Por su lado, el 10 de octubre de 2024, la señora Herrera presentó *Oposición a Moción Suplementaria Suplementando "Moción Bajo la Regla 10.2(5) Solicitando Desestimación con Perjuicio de la Reconvención (Anot. Num. 31)" (Anot. Num 41).*[16] En esta, insistió en su posición referente a que el número de apartamento no tenía nada que ver con los fundamentos de las alegaciones de la reconvención. Evaluado estos escritos, el 3 de enero de 2025, notificado el 7 de enero de ese año, el foro primario emitió *Resolución.*[17] Por virtud de esta, declaró *No Ha Lugar* la solicitud de desestimación de la reconvención y enfatizó que el número de espacios de residencia o *independent dwellings* sería determinado luego de la celebración de una vista evidenciaria en la que el foro *a quo* estaría recibiendo prueba documental y testifical a esos efectos.

Insatisfechos, el 6 de febrero de 2025, los Peticionarios comparecieron ante nos y formularon los siguientes señalamientos de error:

A. Erró el TPI como cuestión de derecho procesal al eximir a la recurrida Sra. Herrera de su peso de probar y demostrar que estaban presentes todos los requisitos jurisdiccionales estatutarios impuestos por la ley FHA

---

[15] *Íd.*, págs. 150-155.
[16] *Íd.*, págs. 164-170.
[17] *Íd.*, págs. 172.

para que el TPI tuviera jurisdicción sobre la materia sobre las causas de acción bajo la ley FHA de la reconvención.

B. Erró el TPI como cuestión de derecho procesal al hacer caso omiso de la admisión judicial de la recurrida Sra. Herrera y de la declaración jurada incontrovertida del peticionario Sr. González, lo que demostraba que el TPI carecía de jurisdicción sobre la materia sobre las causas de acción bajo la ley FHA de la reconvención.

C. Erró el TPI como cuestión de derecho al rechazar desestimar la reconvención, toda vez que de las alegaciones y de la evidencia incontrovertida quedó demostrado que el caso no cumplía con el requisito jurisdiccional estatutario de la sección 803 (b)(2) de la ley FHA (42 U.S.C. sec. 3603(b)(2)) de que la propiedad inmueble tuviera cinco o más "independent dwellings".

El 13 de febrero de 2025, emitimos *Resolución* en la que le concedimos un término de diez (10) días a la parte Recurrida para que expusiera su posición en torno al recurso. Oportunamente, el 24 de febrero de 2025, la señora Herrera presentó *Oposición a Expedición de Certiorari.* No obstante, el señor Herrera no presentó escrito alguno.

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso de autos.

## II.

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter

dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR __ (2023), 2023 TSPR 145, págs. 24-26. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para

llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra,* págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. *Desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil*

En nuestro esquema procesal, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite a la parte demandada solicitar la desestimación de la acción legal antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Inmob. Baleares et al. v. Benabe et al.* 214 DPR ___ (2024) 2024 TSPR 112, pág. 18-19 citando a *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065 (2020). La precitada regla fija los siguientes fundamentos para solicitar la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio;** y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro).

En lo pertinente, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra,* permite la desestimación de una demanda bajo el fundamento de que no expone una reclamación que justifique la concesión de un remedio. En este contexto, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorables a la parte demandante. *Inmob. Baleares et al. v. Benabe et al.,* supra. En específico, debe considerar ciertos todos los hechos bien alegados en la demanda que hayan sido aseverados de manera clara y concluyente. *Banco Popular de Puerto Rico v.*

*Cable Media of Puerto Rico, Inc.,* 215 DPR___ (2025) 2025 TSPR 1, pág. 11.

No obstante, "no procede la desestimación a menos que se deduzca con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación". *El Día, Inc. v. Mun. de Guaynabo,* 187 DPR 811, 821 (2013). Tampoco procede la desestimación si la demanda es susceptible de ser enmendada. *Accurate Sols. v. Heritage Environmental,* 193 DPR 423, 433 (2015).

Ante una moción de tal naturaleza, "resulta evidente interpretar las alegaciones conjunta y liberalmente a favor del promovido". *Torres, Torres v. Torres et al.,* 179 DPR 481, 502 (2010). El tribunal debe examinar si "a la luz de la situación más favorable al demandante, y resolviendo toda duda a su favor, la demanda es suficiente para constituir una reclamación válida". *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc., supra,* pág. 12.

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por los Peticionarios, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción no intervendremos en la determinación recurrida emitida por el foro primario. Los Peticionarios no han demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constataron que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por tanto, procede que se deniegue el recurso de *certiorari* de epígrafe. Por consiguiente, no intervendremos con la determinación del foro primario, pues no se encuentran presentes

ninguno de los elementos enumerados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**IV.**

Por los fundamentos anteriormente expresados, **denegamos** el presente recurso.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones